# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL R. STEINWAY and
PEGGY A. STEINWAY and
DAVID W. CROWELL,

    Plaintiffs,

v.

THE VILLAGE OF PONTOON BEACH, et al.,

    Defendants.                             Case No. 06-cv-1043-DRH

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

## I. INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment and Memorandum of Law in Support (Doc. 48), to which Plaintiffs have filed their opposing Response (Doc. 59). After careful review of the parties' submissions, the matter is now ripe for determination.

Plaintiffs Michael Steinway, Peggy Steinway and David Crowell have brought suit against the Village of Pontoon Beach, Illinois (the "Village"), as well as Pontoon Beach Police Chief Charles Leuhmann, Patrolman John Simmons and Lieutenant Dan Able, both in their official and individual capacities. Both Michael

and Peggy Steinway bring § 1983 claims for violations of their civil rights against Defendants (Counts 1 & 4) - in particular, unlawful arrest, excessive force and false imprisonment, in violation of the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution. All three Plaintiffs each bring an Illinois common law claim for assault and battery against Defendants (Counts 2, 5 & 7), as well as an Illinois common law claim for false imprisonment and unlawful restraint/false arrest against Defendants (Counts 3, 6 & 8).[1] For the reasons discussed herein, Defendants' Motion (Doc. 48) is granted in part and denied in part, the Court finding that a hearing is necessary on the issue of probable cause.

## II. UNCONTROVERTED FACTS

Plaintiffs' claims arise from events occurring on December 28, 2005, at 5136 Whitsell Way in Pontoon Beach, Illinois (hereinafter the "Steinway residence"), where plaintiff Michael Steinway ("Steinway"), his wife Peggy Steinway and his stepson David Crowell ("Crowell"), reside (Doc. 2, p. 11, ¶ 17). Crowell placed an emergency 911 call early that morning, stating that he and Steinway had gotten into an argument which led to a brief physical altercation and he needed somebody to come by and control it (*Id*. at ¶ 18; *see also* Doc. 49, Attachment. 2 - Crowell Dep., 15:2-9). Crowell, who had returned to the Steinway residence in the early morning hours after a night of drinking, was awakened by Steinway (Doc. 59, Ex. 4 - Steinway

---

[1] Plaintiffs claim that the court has federal question jurisdiction, 28 U.S.C. §§ 1331 and 1343, over the two § 1983 claims and supplemental jurisdiction, 28 U.S.C. § 1367, over the Illinois common law claims.

Dep., 33:18-21; 36:1-21; 43:1-5; *see also* Doc. 59, Ex. 5 - Peggy Steinway Dep., 10:17-11:13). Steinway confronted Crowell for nailing wooden boards on his bedroom door and also for blocking access to the main fuse box, located in his bedroom, when he had previously been told not to do so[2] (Steinway Dep., 33:18-21; 36:1-21; 43:1-5; Peggy Steinway Dep., 9:4-23; 16:22-17:14). The two started yelling and pushing one another; Steinway attempting to keep Crowell in the bedroom to finish the discussion and Crowell trying to push his way past Steinway to leave (Peggy Steinway Dep., 9:24-10:16). Peggy Steinway attempted to break up the altercation between Crowell and Steinway. Eventually, they broke it up and Crowell headed to the upstairs bathroom to make the 911 call[3] (*Id*. at 17:21-19:5).

After calling 911, Crowell stepped outside to smoke a cigarette (*Id*. at 19:6-20:19). As he was standing there, Patrolman Simmons pulled up in his squad car, got out, walked up to Crowell and asked him his name (*Id*. at 17:10-17). Once Crowell identified himself, Patrolman Simmons told him to put the cigarette down (Doc. 59, Ex. 6 - Simmons Dep., 29:21-24; Crowell Dep., 17:13-18). Crowell says he questioned why he needed to put his cigarette down, explaining he was the one that made the 911 call (Simmons Dep., 30:1-7; Crowell Dep., 17:18-21). After Crowell put down his cigarette, Simmons asked him to place his hands behind his

---

[2] Steinway had several previous conversations with Crowell about not blocking the access to the fuse box (Peggy Steinway Dep., 16:22-17:14).

[3] Steinway testified during his deposition that both he and his wife taught Crowell to call the police to escort him out of the house if he gets "in a situation" (Doc. 59, Ex. 4, Steinway Dep., 30:4-24).

back, handcuffed him and put him in the back seat of the squad car (Simmons Dep. 34:3-19; Crowell Dep., 18:6-10).

After placing Crowell in the squad car, Simmons proceeded to walk back up to the Steinway residence to speak with Michael and Peggy Steinway to find out their version of events (Simmons Dep., 34:20-21; Crowell Dep., 29:2-7). The three also discussed giving Crowell a "cooling off period." Simmons asked the Steinways if Crowell had a place where he could stay for a few days. The Steinways said Crowell could stay with relatives or his friends (Steinway Dep., 41:7-10; 43:18-44:1; Peggy Steinway Dep., 30:1-16).

Next, Lieutenant Able arrived on the scene in his squad car (Crowell Dep., 29:2-19; Steinway Dep., 46:5-16). Simmons and Abel had a brief conversation at the end of the driveway and then both headed up to the front door of the Steinway residence (Crowell Dep., 29:17-19). Able told Steinway to come outside, stating that he was under arrest (Steinway Dep., 48:1-5). When Steinway asked why he was being arrested, Able told him to get outside and not worry about why (*Id*. at 48:5-8). When Steinway protested that he was being arrested for no reason, he claims that Able grabbed him, placed the Taser on the right side of Steinway's back and pulled the trigger[4] (Steinway Dep., 48:9-16; Doc. 59, Ex. 1 - Lieutenant Able Dep., 6:10-16).

Simmons assisted with Steinway's arrest. Peggy Steinway, who had been standing next to her husband before he was pulled out the front door by Able,

---

[4] Steinway also stated during his deposition that Simmons tased him (Steinway Dep., 48:17-23).

was also placed under arrest (Steinway Dep., 71:6-24). She claims Simmons placed his taser in her face and threatened to use it (Doc. 2, ¶ 28). She was handcuffed and put in the backseat of Simmons' squad car, next to Crowell (Steinway Dep., 71:14-18; Crowell Dep., 49:16-24). All three Plaintiffs were transported to the Pontoon Beach police station. Crowell was told he would not be charged if he made statement regarding the incident. Once he gave his statement, Crowell was taken home by Simmons (Crowell Dep., 51: 3-24; 54:1-11).

Steinway was later charged with the Class A misdemeanors of domestic battery, resisting a peace officer and interference with emergency communications (Doc. 2, pp. 17-18, ¶ 42). After proceeding to trial in state court, the charge of interference with emergency communications was dismissed on Steinway's directed verdict motion. The jury subsequently found Steinway "not guilty" of domestic battery, but found him "guilty" as to the charge of resisting a peace officer. Steinway was then convicted and sentenced (*Id.*; *see also* Doc. 48, Ex. 1 - state court docket). Class A misdemeanor charges of obstructing a peace officer and resisting a peace officer were filed against Peggy Steinway (Doc. 2, p. 18, ¶ 43). She is still awaiting jury trial on these charges (*Id.* at p. 20, ¶ 48).

## III. SUMMARY JUDGMENT

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Oats v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 323). In reviewing a summary judgment motion, this Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1124 (N.D. Ill. 1995). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the nonmovant. *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a

verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994).

## IV. ANALYSIS

In their summary judgment motion, Defendants first argue that Plaintiffs fail to establish a *prima facie* case of municipal liability on the part of the Village of Pontoon Beach and thus, the civil rights claims against the Village should fail as a matter of law (Doc. 48, pp. 5-8). Secondly, Defendants argue that Plaintiffs also fail to show that Charles Leuhmann had "final policymaking authority" as the Pontoon Village Chief of Police and should be granted summary judgment on Plaintiffs' § 1983 claims (*Id*. at 8-9). Defendants further argue they should be granted summary judgment because Plaintiffs cannot establish a distinct claim of civil conspiracy under § 1983 (*Id*. at 10-11). Additionally, Defendants assert that the Village of Pontoon Beach is entitled to summary judgment because Plaintiffs cannot show that Patrolman Simmons or Lieutenant Able committed any underlying § 1983 civil rights violations (*Id*. at 11-12). Lastly, Defendants believe Plaintiffs cannot prevail on his claims of false arrest and false imprisonment because his arrest was based on probable cause (*Id*. at 12).

In Response, Plaintiffs argue that they can establish municipal liability based on evidence of the Village's failure to file taser use reports or download taser

use data (Doc. 59, pp. 7-10). Additionally, Plaintiffs assert that Defendants should be denied summary judgment on Plaintiffs' state law claims, conclusively arguing that "the facts in evidence in this case adduced through the depositions of the plaintiffs and defendants demonstrate that all of the allegations between plaintiffs and defendants as to the facts supporting plaintiffs' state claims are in dispute" *(Id.* at 10).

## A.     Municipal Liability

### 1.     Widespread Practice

Plaintiffs Michael Steinway and Peggy Steinway each claim that the Village of Pontoon Beach (the "Village") is liable under § 1983 for the actions of Patrolman Simmons and Lieutenant Able. This type of claim, often referred to as a *Monell* claim, must be based upon a showing that the Village's municipal policy itself is the source of Plaintiff's constitutional injury. ***Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory");** *see also* ***McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)(citing *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994))**. In order to show that the Village is liable for a § 1983 violation of Plaintiffs' civil rights by having an unconstitutional policy or custom, Plaintiffs must demonstrate either:

> (1)     that the Village had an express policy that, when enforced, causes a constitutional deprivation;
>
> (2)     that the Village had a widespread practice that, although not authorized by written law or express municipal policy,

> is so permanent and well settled as to constitute a custom or usage within the force of law; or
>
> (3) Plaintiffs' constitutional injury was caused by a person with final policymaking authority.

***McCormick v. The City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)(citing *McTigue*, 60 F.3d at 382)**.

As stated by the Seventh Circuit, "to maintain a § 1983 claim against a municipality, one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (the policy or custom was the 'moving force' behind the constitutional deprivation)." ***Gable*, 296 F.3d at 537 (citing *Monell*, 436 U.S. at 691-94)**. Further, to attribute liability to the Village, Plaintiffs must show that Village policymakers "were 'deliberately indifferent as to [the] known or obvious consequences.'" ***Id.* (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 406-07 (1997))**. In other words, that "'a reasonable policymaker [would] conclude that the plainly obvious consequences' of the [Village's] actions would result in the deprivation of a federally protected right." ***Id.* (alteration in original)**. As illustrated by the Seventh Circuit in ***Phelan***:

> [T]he word "widespread" must be taken seriously. It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.

***Phelan v. Cook County*, 463 F.3d 779, 790 (7th Cir. 2006)**.

Defendant assumes from the allegations of Plaintiffs' Complaint that the *Monell* claims are based upon the second prong for establishing municipal liability: a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law. Continuing, Defendants argue that the *Monell* claims must fail as a matter of law because there is no evidence that "the alleged unlawful practices were either pervasive or widespread," thereby amounting to a "de facto policy decision," allegedly resulting in numerous constitutional violations (Doc. 48, p. 7).

Specifically regarding Michael Steinway's *Monell* claim (Count 1), Defendants note that during his deposition, Steinway testified that aside from his own allegations, he did not have personal knowledge of any constitutional violations committed by Pontoon Beach police officers, such as: committing unprovoked assaults (including use of tasers), stopping or detaining other individuals without probable cause, falsely arresting or imprisoning other individuals, instigating wrongful or malicious prosecutions, arresting other individuals for minor traffic offenses, illegally forcing other individuals to post cash bonds rather than being released on their own recognizance, preparing false arrest reports to cover up illegal conduct or using excessive force against other individuals (Doc. 48, p. 7, citing Steinway Dep., pp. 135-142). Thus, Defendants conclude that Steinway offers no personal knowledge or other substantiating evidence to indicate that the Village maintains a widespread practice encouraging police misconduct and should

therefore be liable as a municipality. Additionally, Defendants argue Steinway has no evidence to support his allegation of municipal liability that the Village has a widespread practice of arresting individuals without probable cause.

The second portion of Defendants' argument regarding municipal liability centers on the *Monell* claim alleged by Crowell. However, the Court does not find that Crowell has specifically alleged a *Monell* claim; all he alleges are Illinois state law claims for assault and battery (Count 7) and false arrest/false imprisonment (Count 8). As such, the Court cannot consider Defendants' arguments in this regard because such claim was not actually alleged by Crowell. Peggy Steinway, however, did allege a *Monell* claim (Count 4) similar to Steinway's claim in Count 1. Therefore, although Defendants do not specifically move for summary judgment with respect to Peggy Steinway's *Monell* claim against the Village, the Court will consider it as part of its analysis.

Plaintiffs agree it is under the second prong of *Monell*, the "widespread practice" method, whereby they attempt to establish liability against the Village for the § 1983 *Monell* claims, but counter Defendants' assertion that there is no evidence to support such allegations of municipal liability (Doc. 59, p. 7). In particular, Plaintiffs believe that the evidence regarding the Village of Pontoon Beach Police Department's failure to record or report its taser use constitutes a widespread practice. Steinway alleges that he was tased more than once on December 28, 2005. This is controverted by Able's deposition testimony that he only used his taser on Steinway one time. Steinway argues that the Village is liable as a municipality

because it acquiesced in behavior that subjected him to constitutional violations such as the police officers' use of excessive force during his arrest.

To elaborate, Plaintiffs argue that the Village had the capability of downloading the user data, including date and time of usage, for each taser owned by the Village of Pontoon Beach Police Department. However, the deposition testimony of Able states that this data was never downloaded prior to or around the time of the December 28, 2005 incident at issue (Doc. 59, pp. 7-8). Plaintiffs assert that downloading this data could have enabled the Village to track the actual use of the individual tasers, allowing for verification of the officers' claims of taser use (Doc. 59, p. 9, citing Able Dep., pp. 49-52). Moreover, Able also stated, during his deposition, that the internal time clocks of the taser data tracking chips were never adjusted to local time, thus, Plaintiffs assert that this precluded "downloading data which would have been able to be used to ascertain if a particular taser had been used on a particular date and time" (Doc. 59, p. 9). In other words, without the taser use data downloaded and the taser internal time clock set for local time, there is no means to verify which taser(s) were used on Steinway, the number of times he was tased and the date and time of use. This failure of accountability is what Plaintiffs believe allows the Village police officers to deploy tasers in an excessive manner in violation of an individual's constitutional rights.

Plaintiff also points to the Village of Pontoon Beach Police Department's General Order 51A, which details the procedures for its officers' use of tasers (Doc. 59, p. 8, Ex. 3). Section 6 of General Order 51A states, in pertinent part: "All

incidents involving the use of the Taser will require an official numbered report to be completed by the Officer prior to the end of the duty shift in which the incident occurred." Concerning the December 28, 2005 incident involving Steinway, Plaintiffs state that there was no official taser use report filed in accordance with General Order 51A. Plaintiffs believe the failure to file a taser use report also evinces an unwritten custom or practice allowing the Village police officers to use excessive force, as there is no method in place to track each officer's actual use of a taser (Doc. 59, p. 8).

At most, Plaintiffs' evidence of the Village's widespread practice of not downloading taser use data or requiring incident reports only relates to Steinway's allegation of excessive force in his *Monell* claim, not his allegations of false arrest and false imprisonment, also plead in Count 1. This alleged widespread practice would not relate to allegations of false arrest or false imprisonment. The problem with Plaintiffs' evidence is that there is nothing to show the Village's actions were "widespread." Regarding the failure to file reports for taser use, Plaintiffs only point to the incident involving Steinway. They fail to show any other individuals who were tased by Village of Pontoon Beach police officers where an incident report was not later filed pursuant to General Order 51A. One instance will not suffice in allowing Steinway's *Monell* claim to survive summary judgment. ***See, e.g., Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) (finding that the plaintiff's alleged personal knowledge of two incidents of correctional officer misconduct**

**insufficient to meet the test of a widespread practice to constitute a custom);** *Gable v. City of Chicago*, **296 F.3d 531, 538 (7th Cir. 2002) (finding occurrence of misconduct only on three occasions during a four-year period was "too few to indicate" that City had widespread practice of which policymakers had reason to be aware)**.

This leaves the remaining assertion of municipal liability via the Village's alleged widespread practice of failing to require the downloading of taser use data before or around the time of the incident at issue. The Court finds that Plaintiffs have failed to put forth specific evidence showing multiple individuals who claim to have been tased by Village of Pontoon Beach police officers. Again, one instance will not suffice under *Monell*. Further, Plaintiffs failed to show any evidence that a widespread practice was the cause of the injuries suffered. In other words, that the Village was deliberately indifferent to the fact that the failure of the police department to download taser usage data for tracking purposes would plainly result in the officers' use of excessive force. Plaintiffs' widespread practice theory, accordingly, merely amounts to rank speculation without any evidence upon which a jury could base a reasonable inference. Therefore, §1983 *Monell* action against the Village only, as plead in Counts 1 & 4 of Plaintiffs' Complaint, is therefore dismissed as a matter of law.[5] The *Monell* claims against the remaining Defendants still stand.

---

[5] The Court's grant of summary judgment in favor of the Village as to Peggy Steinway's *Monell* claim (Count 4) is *sua sponte*, finding that the same analysis applies to her claim as her husband's.

## 2. Final Policymaking Authority

Defendants further argue Plaintiffs cannot show that defendant Chief Leuhmann, sued in both his official and individual capacity, had "final policymaking authority," to impose municipal liability upon the Village under the third prong of *Monell*: that a plaintiff's constitutional injury was caused by a person with final policymaking authority (Doc. 48, pp. 8-9). Plaintiffs clearly allege as much in their Complaint, stating that "at all times relevant hereto and or about December 28, 2005, Chief Leuhmann was the final decision-maker for defendant Pontoon Beach on all customs, practices, and policies at the Pontoon Beach Police Department" (Doc. 2, p. 3, ¶ 7). "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." **Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)**. Whether a municipal official has final policymaking authority is a question of state or local law. ***Id.*** In their Motion, Defendants argue that Plaintiffs have failed to produce any evidence, other than their conclusory allegations, that Chief Leuhmann had any final policymaking or decision-making authority for the Village, thereby asserting that the claims against him must be dismissed. Plaintiffs, in their Response, have failed to specifically address this argument.

At the summary judgment stage, Defendants are not obligated to negate Plaintiffs' claims. Instead, Defendants must point out the absence of material fact

involving one or all of Plaintiffs' claims.  Then, the burden is on Plaintiffs, as non-movants, to come forward with specific evidence showing that a triable issue of fact exists regarding the challenged claim or claims.  ***See Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996) (citing *Celotex*, 477 U.S. at 323)**.  Plaintiffs fail to meet their burden in this regard and cannot merely rest on their allegations.  Therefore, summary judgment regarding Plaintiffs' § 1983 claims against Chief Leuhmann in his official capacity and the Village, under the third prong of *Monell*, is granted.  Further, as Plaintiffs make no allegations that Chief Leuhmann was personally involved in the incidents giving rise to this suit, the Court finds Chief Leuhmann is entitled to summary judgment in his individual capacity, as well, with regard to Plaintiffs' § 1983 claims (Counts 1 & 4).  Therefore, the Court grants summary judgment in favor of the Village and Chief Leuhmann on plaintiffs Michael and Peggy Steinway's § 1983 claims, as stated in Counts 1 & 4.  However, these § 1983 claims remain against Patrolman Simmons and Lieutenant Able.

**B.     Civil Rights Conspiracy**

"To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." ***Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir.2003) (internal citation and**

**quotation marks omitted; alteration in original)**. Plaintiffs allege Defendants acted individually and in conspiracy with each other, as set forth in the general allegations (*see* Doc. 2, p. 21, ¶ 51; p. 22, ¶ 53, as well as the state law claims: Count 2 - ¶ 69; Count 3 - ¶ 73; Count 5 - ¶ 69; Count 6 - ¶ 73; Count 7 - ¶ 69; Count 8 - ¶ 73). Defendants argue there is no underlying constitutional violation because there was probable cause to arrest Michael Steinway, and so Plaintiffs cannot prevail on their civil rights conspiracy claims (Doc. 48, p. 11). Yet, Defendants' argument does not appear to include the allegations of civil conspiracy in regards to plaintiffs Peggy Steinway and Crowell.

What is problematic here is that a finding of probable cause may preclude claims of civil conspiracy as they relate to Michael Steinway, however, there is a discrepancy in the record. The Court takes judicial notice of the court docket for Steinway's criminal proceedings relating to his December 28, 2005 arrest (Doc. 48, Ex. 1). However, in Plaintiffs' Complaint, they have alleged Steinway was found "not guilty" (Doc. 2, p. 21, ¶ 51) and further alleged:

> [E]ach and all predicate criminal complaints and/or actions and/or charges filed by defendants against plaintiff Michael Steinway were dismissed by the Circuit Court of the Third Judicial Circuit, confirming that no reasonable grounds or probable cause existed to believe that plaintiff Michael Steinway committed any of the predicate criminal offenses with which he was charged by the defendants, and each and all of them.

(Doc. 2, p. 32, ¶ 75).

The Court believes a hearing is necessary to clarify what Plaintiff meant by the allegations as shown above and will set one accordingly. As such, it reserves

its ruling on Defendants' motion for summary judgment in regards to the claims of civil conspiracy.

**C.    Probable Cause**

Defendants move for summary judgment on Michael Steinway's federal and state law claims of false arrest and false imprisonment (Counts 1 & 3).  In support, Defendants state that a jury found Steinway guilty of resisting arrest, thereby establishing probable cause (Doc. 48, p. 12 and Ex. 1, p. 3).  Under Illinois law, a claim of false arrest cannot lie if there existed probable cause at the time for the Officer to make the arrest.  ***Lappin v. Costello*, 232 Ill. App. 3d 1033, 1041, 598 N.E.2d 311, 317, 174 Ill. Dec. 114, 120 (4th Dist. 1992)**.  "The existence of probable cause is a question of law and only becomes a question of fact if the operative facts are in dispute." *Id.* **(citing *Gaszak v. Zayre of Illinois, Inc.*, 16 Ill. App. 3d 50, 57, 305 N.E.2d 704, 709 (1st Dist. 1973))**.

If probable cause is established by a finding of "guilty" on one of the charges against Steinway regarding his December 28, 2005 arrest, it will prevent his claims of false arrest and false imprisonment against Defendants.  Again, due to the discrepancy between the evidence Defendants offer and Plaintiffs' allegations, the Court will attempt to clarify during the hearing on probable cause.  For now, the Court will reserve its ruling on Defendants' motion for summary judgment regarding Steinway's claims of false arrest and false imprisonment.  Additionally, the Court notes that Defendants have not asserted the affirmative defense of probable cause

regarding the claims of false arrest and false imprisonment alleged by either Peggy Steinway (Counts 4 & 6) or Crowell (Count 8) and thus, these Counts survive summary judgment.

**D.     Respondeat Superior**

A municipality, such as the Village, can only be liable under a theory of *respondeat superior* for its employees' actions, but only if those employees are found liable on the underlying claim. ***Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003)**. Of course, this theory of *respondeat superior* municipal liability only pertains to Plaintiffs' state law claims – not the federal *Monell* claims. Naturally, if Simmons and Able are not found liable on Plaintiffs' claims of false arrest and false imprisonment, the Village and Chief Leuhmann would also not be liable (as there are no allegations that Chief Leuhmann was directly involved and so his liability would only stem from a *respondeat superior* theory as well). However, regarding Plaintiffs' state law claims, the only ones that may not survive Defendants' Motion for Summary Judgment are Steinway's claims of false arrest and false imprisonment, as previously discussed. Therefore, until the probable cause issue is resolved, the Court will reserve its ruling regarding *respondeat superior* liability for both the Village and Chief Leuhmann.

## V. CONCLUSION

In sum, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (Doc. 48). It also reserves its rulings on certain issues, as previously discussed, until such time after the hearing regarding probable cause has been conducted. Accordingly, partial summary judgment is granted in favor of the Village of Pontoon Beach and Chief Leuhmann *only*, on plaintiffs Michael Steinway and Peggy Steinway's § 1983 claims, as alleged in Counts 1 & 4 of their Complaint. The Court further sets a **HEARING** regarding probable cause for **Thursday, August 21, 2008 at 9:00 a.m.** (The Court anticipates this hearing should not last more than half a day, at the most.) Further, the Court *sua sponte* continues the Final Pretrial Conference in this case, currently scheduled for July 25, 2008. The new date for the Final Pretrial Conference is **Thursday, September 4, 2008 at 2:30 p.m.**

**IT IS SO ORDERED.**

Signed this 9th day of July, 2008.

/s/    *David R Herndon*
**Chief Judge**
**United States District Court**